RECEIVED
IN LAKE CHARLES, LA.
JUN - 8 2015
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| TWO OIL SERVICES, L.L.C., | * | CIVIL ACTION NO. 2:14-cv-3433 |
| Plaintiff, | * | |
| v. | * | JUDGE MINALDI |
| SIMONS PETROLEUM, L.L.C., | * | |
| Defendant. | * | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is Simons Petroleum, L.L.C.'s ("Simons") Motion to Dismiss Breach of Fiduciary Duty Claim and Damage Claim for Lost Profits [Doc. 10], to which Two Oil Services, L.L.C. ("Two Oil") has filed a Response [Doc. 16], to which Simons has filed a Reply [Doc. 17]. For the following reasons, Simons' Motion [Doc. 10] be and hereby is **GRANTED, IN PART,** and **DENIED, IN PART.**

### FACTS & PROCEDURAL HISTORY

On November 11, 2002, Two Oil and Simons executed a Purchase, Assignment, and Facilities Management Agreement ("the Management Agreement") wherein Two Oil sold to Simons all of its fuel and lubricants inventory, and agreed to lease its fueling equipment and tankage to Simons in exchange for a forty percent share of the net profits from operations.[1] The parties also stipulated in an addendum that if Simons purchased all the fueling equipment and tankage from Two Oil before the expiration of the initial term, then Simons would have the option to renew the term ending February 28, 2015.[2]

---

[1] Pet. for Damages [Doc. 1-1] ¶ 11.
[2] *Id.* ¶ 13.

1

In 2009, Two Oil and Simons entered into an Equipment Purchase Agreement, and Two Oil sold the fueling equipment to Simons for $175,000.[3] At the time, the parties stipulated that the Management Agreement was to otherwise remain effective.[4] Simons agreed to pay Two Oil $175,000 in quarterly installments of $10,000, commencing on March, 31, 2010, and continuing through the last day of each quarter thereafter until paid in full on December 31, 2014.[5] Simons began having trouble making payments in 2011; it was initially able to catch up on its payments, but then no quarterly payment was received on March 31, 2013.[6]

Meanwhile, Two Oil had also stopped receiving its payments of forty percent share of Simons' net profits in accordance with the Management Agreement.[7] On August 16, 2011, Two Oil contacted Simons to inquire about the missing payments and reports.[8] On May 14, 2012, Simons sent quarterly reports from January 2011 through April 2012.[9] Communication then stopped between the parties around this time.

On June 25, 2013, Two Oil filed suit against Simons and two other defendants.[10] Two Oil alleged that Simons was in breach of its contracts with Two Oil, and had breached its fiduciary duties to Two Oil.[11]

Simons removed this case on December 11, 2014, citing the court's diversity jurisdiction.[12] The instant Motion was filed on March 3, 2015.[13] Simons is requesting that the

---

[3] Pet. for Damages [Doc. 1-1] ¶ 15.
[4] *Id.*
[5] *Id.* ¶ 16.
[6] *Id.* ¶ 18. There is also an allegation that Simons allowed the fueling equipment and tankage to be sold to a third party. *Id.* ¶ 27.
[7] *Id.* ¶ 20.
[8] Pet. for Damages [Doc. 1-1] ¶ 21.
[9] *Id.* ¶ 27.
[10] *Id.* The other defendants were dismissed as parties while the matter was still in state court. *See* Not. of Removal [Doc. 1]
[11] Am. Compl. [Doc. 12-2] ¶ 26.
[12] Not. of Removal [Doc. 1], at 1.
[13] Mot. to Dismiss [Doc. 10].

claims based on the allegation of a breach of fiduciary duty be dismissed and that a ruling be issued declaring that damages for lost profits are precluded by the Management Agreement.

## LAW & ANALYSIS

### I. Motion to Dismiss Standard

Motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure seek the dismissal of an action for failure to state a claim and challenge the sufficiency of a plaintiff's allegations. *See* Fed. R. Civ. Pro. 12(b)(6). The Fifth Circuit has stated that motions to dismiss are generally viewed with disfavor and should rarely be granted. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (citing *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (additional citations omitted)).

A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The allegations must "raise the right to relief above the speculative level." *Id.* at 555. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

### II. Existence of a Fiduciary Relationship

The parties agree that Oklahoma law applies.[14] "The essential test in determining the existence of a joint venture is whether the parties intended to establish such a relation." *Martin v. Chapel, Wilkinson, Riggs, and Abney*, 637 P.2d 81, 86 (Okla. 1981). There are three criteria used to determine whether a joint venture relationship exists: (1) joint interest in property, (2) an express or implied agreement to share profits and losses of the venture, and (3) action or conduct showing cooperation in the project. *Id.* at 85. Oklahoma law recognizes a fiduciary duty arising out of a commercial contract if the transaction involved facts and circumstances indicative of the

---

[14] *See* Purchase, Assignment[,] and Facilities Management Agreement [Doc. 10-2], at 21, ¶ 19.

imposition of trust and confidence, rather than facts and circumstances indicative of an arms-length commercial contract. *Quinlan v. Koch Oil Co.*, 25 F.3d 936, 942 (10th Cir. 1994) (citing *Devery Implement Co. v. J.I. Case Co.*, 944 F.2d 724, 730 (10th Cir. 1991)).

In *Multimedia Games, Inc. V. Network Gaming Intern. Corp.*, No. 98-CV-67-H(M), 1999 WL 33914442, at *7-8 (N.D. Okla. Sept. 3, 1999), the court examined an agreement that included expressly that "[n]othing herein shall be construed as to create any partnership, joint venture, fiduciary or employment relationship between the parties . . . ." Reasoning that the provision was an expression of mutual understanding between the parties, the court found that the relationship was of a commercial, arms-length nature—not fiduciary. *Id.*

The Management Agreement between Two Oil and Simons provides that "neither Simons nor its employees or agents shall be considered joint venturers, partners, agents or employees of Two Oil, or vice versa, for any reason or for any purpose whatsoever."[15] There is also a provision in the Management Agreement which states that the Management Agreement "constitutes the entire agreement between Two Oil and Simons concerning the subject matter thereof. No prior or contemporaneous representations, inducements, promises, or agreements, oral or otherwise, . . . will be of any force or effect."[16]

Two Oil and Simons clearly expressed their intent to avoid entering a fiduciary relationship. The facts and circumstances established by the petition and Management Agreement indicate that Two Oil and Simons entered into an arms-length commercial contract. Therefore, Simons was not a fiduciary of Two Oil, and Two Oil's claims arising under a theory of breach of fiduciary duty must be dismissed.

---

[15] Purchase, Assignment[,] and Facilities Management Agreement [Doc. 10-2], at 19, ¶ 13.
[16] *Id.* at 22, ¶ 25.

### III. Lost Profits

Simons asserts that the "Consequential Damages" section of the Management Agreement precludes Two Oil from recovering damages for loss of profit.[17] The Management Agreement states that "[n]either party shall be responsible or liable to the other party for indirect, special, incidental, or consequential damages, including but not limited to loss of profit . . . ."[18]

Under Oklahoma law, damages for loss of profit may be considered either direct or consequential. *See Florafax Int'l, Inc. v. GTE Mkt. Res., Inc.*, 933 P.2d 282, 291-94 (Okla. 1997). In contracting waiver provisions, parties are free to define terms as they see fit. *Quicksilver Res., Inc. v. Eagle Drilling, L.L.C.*, No. H-08-868, 2009 WL 1312598, at *4-5 (S.D. Tex. May 8, 2009).

The Tenth Circuit interpreted a waiver of consequential damages that—as in the present case—specified that consequential damages included, but were not limited to, lost profits.[19] *Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151, 1155-56 (10th Cir. 2007). After a review of the waiver's syntax and legal meaning of the words used, the Tenth Circuit concluded that the waiver only applied to consequential damages for lost profits, not direct damages for lost profits. *Id.* at 1157.

Black's Law Dictionary defines "including" as a participle indicating a partial list and comments that the phrase "including but not limited to" is used interchangeably with "including." BLACK'S LAW DICTIONARY 831 (9th ed. 2009). A number of courts are also in agreement with the Tenth Circuit that the phrases "including, without limitation" and "including,

---

[17] Two Oil also argues that this waiver is unenforceable as a matter of Louisiana law because it is against public policy, but this assertion is incorrect. *See Gulf Am. Indus. V. Airco Indus. Gases*, 573 So.2d 481, 489 (La. Ct. App. 1990).
[18] Purchase, Assignment[,] and Facilities Management Agreement [Doc. 10-2], at 21, ¶ 20.
[19] Although the Tenth Circuit was applying Kansas law, it analyzed the waiver by looking to the "common legal meaning of the terms involved." *Penncro Assocs., Inc.*, 499 F.3d at 1156.

but not limited to" introduce items that comprise a part of a greater group. *Optimal Interiors, LLC v. HON Co.*, 774 F.Supp.2d 993, 1009 (S.D. Iowa 2011) (citing *Peter Kiewit Sons' Inc. v. ATSER, LP*, No. 8:08CV541, 2010 WL 1417811, at *3 (D.Neb. Apr. 1, 2010); *Claredi Corp. v. SeeBeyond Tech. Corp.*, No. 4:04CV1304, 2010 WL 1257946, at *5-6 (E.D. Mo. Mar. 26, 2010); and *Ingraham v. Planet Beach Franchising Corp.*, No. 07-3555, 2009 WL 1076713, at *1-2 (E.D. La. Apr. 17, 2009)). The case cited by Simons is not persuasive because although it was decided under Oklahoma law, the language at issue was substantially different. *See Quicksilver Res., Inc. v. Eagle Drilling, L.L.C.*, No. H-08-868, 2009 WL 1312598, at *6-7 (S.D. Tex. May 8, 2009) (distinguishing from *Penncro* an agreement that contained language that "special, indirect, or consequential damages *shall be deemed to include, without limitation,* . . . loss of profit or revenue" and finding that the parties at issue had used their contracting power to redefine "consequential damages") (emphasis added).

The phrases given after "including but not limited to" in the Management Agreement are illustrative of "indirect, special, incidental, or consequential damages." It would be a stretch of interpretation to find that the language was intended to redefine "consequential damages" to include all claims of lost profits. The waiver clause precludes recovery of any indirect, special, incidental, or consequential damages, but it does not preclude recovery of direct damages. Therefore, direct damages for lost profits are still recoverable.

Lake Charles, Louisiana, this 6 day of June, 2015.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE