RECEIVED
IN LAKE CHARLES, LA.

JUN -6 2016

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| TWO OIL SERVICES, L.L.C. | * | CIVIL ACTION NO. 2:14-cv-3433 |
| | * | |
| | * | |
| v. | * | JUDGE MINALDI |
| | * | |
| | * | |
| SIMONS PETROLEUM, LLC | * | MAGISTRATE JUDGE KAY |

**************************************************************************

### MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment (Rec. Doc. 29) filed by Simons Petroleum, LLC ("Simons"), a Motion for Summary Judgment (Rec. Doc. 31) filed by Two Oil Services, L.L.C. ("Two Oil"), a Response (Rec. Doc. 32) filed by Two Oil,[1] a Response (Rec. Doc. 34) filed by Simons, and a Reply (Rec. Doc. 35) filed by Simons. For the following reasons, Simons' Motion for Partial Summary Judgment (Rec. Doc. 29) will be **GRANTED** and Two Oil's Motion for Summary Judgment (Rec. Doc. 31) will be **DENIED IN PART**, and **GRANTED IN PART**.

### FACTS & PROCEDURAL HISTORY

On July 15, 1999, Two Oil entered into a Facilities Utilization Agreement with J.A. Pallet Company, Inc., and J.C.B. Marine Rentals, Inc. (collectively, "Pallet"), wherein Pallet granted Two Oil use and access to portions of its shore based facility in Cameron Parish, Louisiana, to put Two Oil's fuel equipment on the facility for the purpose of selling fuel and lubricants.[2] On November 11, 2002, Two Oil and Simons executed a Purchase, Assignment, and Facilities Management Agreement ("the Management Agreement") wherein Two Oil sold to Simons all of its fuel and lubricants inventory, agreed to lease its fueling equipment and tankage to Simons,

---

[1] Two Oil's Response (Rec. Doc. 32) is the same document as its Memorandum in Support of Motion for Summary Judgment (Rec. Doc. 31-2).
[2] First Supplemental and Am. Compl. (Rec. Doc. 19) ¶ 2.

1

and assigned its contractual rights and obligations with Pallet under the Facilities Utilization Agreement to Simons in exchange for a forty percent share of the net profits from operations.[3] On November 8, 2002, Pallet and Simons stipulated in the Third Addendum to Facilities Utilization Agreement that if Simons purchased all of Two Oil's fueling equipment and tankage before the expiration of the initial term, then Simons would have an automatic option to renew the Facilities Utilization Agreement for an additional five-year period ending February 28, 2015, without Pallet's consent by providing ninety (90) days written prior notice to Pallet.[4]

On September 11, 2009, Pallet sent Simons a Notice of Default claiming that Simons had failed to make a requisite payment of $0.24 per gallon for lubricants distributed from the facility.[5] Pallet requested that Simons provide a monthly dock settlement reflecting the amount of lubricants distributed and the fee due to Pallet, as well as records showing all lubricants distributed through the facility from November 11, 2002, to date.[6] Pallet gave Simons thirty (30) days to respond.[7] On October 8, 2009, Simons responded to Pallet's default letter explaining that following the destructive effect of the hurricanes in 2005 lube sales had been non-existent, and thus no further amounts were due to be paid on lube sales under the contract.[8] Simons also provided a one page summary of lube sales from 2002 through 2005.[9] Simons heard nothing further from Pallet and believed the issue had been satisfactorily resolved.[10]

---

[3] *Id.* ¶¶ 12-13; *see also* Ex. 3, Management Agreement (Rec. Doc. 29-3).
[4] Pet. for Damages (Rec. Doc. 1-1) ¶ 13; *see also* Ex. 4, Third Addendum to Facilities Utilization Agreement (Rec. Doc. 29-4) § 3a.
[5] Statement of Uncontested Material Facts (Rec. Doc. 29-1) ¶ 12.
[6] *Id.*
[7] *Id.*
[8] *Id.* ¶ 13.
[9] *Id.*
[10] *Id.* ¶ 14.

In 2009, Two Oil and Simons entered into an Equipment Purchase Agreement, and Two Oil sold the fueling equipment and tankage to Simons for $175,000.[11] The parties stipulated that the Management Agreement was to otherwise remain effective.[12] On November 25, 2009, Simons sent a letter to Pallet exercising the automatic option to renew the Facilities Utilization Agreement on existing terms.[13] Simons heard nothing but believed Pallet was honoring the renewal since the agreement was for an automatic renewal upon notice.[14] However, on April 20, 2010, Pallet sent Simons a Notice to Vacate alleging that the Facilities Utilization Agreement terminated based upon the expiration of the term and/or default under that agreement.[15] On the same day, the Deepwater Horizon explosion occurred, and Simons began losing business and money as a result of the explosion and the consequent federal moratorium on new drilling projects in the Gulf.[16] After considering its operational losses, adverse relationship with Pallet, and potentially costly litigation with Pallet, Simons decided to cease operations.[17]

When Simons purchased Two Oil's fueling equipment and tankage, it issued a Promissory Note to Two Oil in which it agreed to pay the $175,000 in quarterly installments of $10,000, commencing on March, 31, 2010, and continuing through the last day of each quarter thereafter until paid in full on December 31, 2014.[18] Simons began having trouble making payments in 2011; it was initially able to catch up on its payments, but then no quarterly payment was received on March 31, 2013.[19] Meanwhile, Two Oil had also stopped receiving payments of

---

[11] Pet. for Damages (Rec. Doc. 1-1) ¶ 15.
[12] *Id.*
[13] Statement of Uncontested Material Facts (Rec. Doc. 29-1) ¶ 16.
[14] *Id.*
[15] *Id.* ¶ 17.
[16] *Id.* ¶¶ 18-19.
[17] *Id.* ¶ 19.
[18] Pet. for Damages (Rec. Doc. 1-1) ¶ 16.
[19] *Id.* ¶ 18.

its forty percent share of Simons' net profits in accordance with the Management Agreement.[20] On August 16, 2011, Two Oil contacted Simons to inquire about the missing payments and reports.[21] On May 14, 2012, Simons sent quarterly reports from January 2011 through April 2012.[22] Communication then stopped between the parties around this time.

On June 25, 2013, Two Oil filed suit against Simons and two other defendants in the Thirty-Eighth Judicial District Court for the Parish of Cameron, Louisiana.[23] Simons removed this case on December 11, 2014, citing the court's diversity jurisdiction.[24] On April 30, 2015, Two Oil filed a First Supplemental and Amending Complaint alleging that Simons (1) breached the Equipment Purchase Agreement by refusing to enforce and demand specific performance of the renewal, (2) breached the Management Agreement by not complying with the duties and obligations of the Facilities Utilization Agreement, and (3) failed to pay the Promissory Note in full.[25] On February 10, 2016, Simons filed its Motion for Partial Summary Judgment,[26] and Two Oil filed its Motion for Summary Judgment[27] on March 2, 2016.

## LAW & ANALYSIS

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is said to be genuine only where "a reasonable jury could return a verdict for the non-moving party." *Dizer v. Dolgencorp, Inc.*, No. 3:10-cv-699, 2012 U.S. Dist. LEXIS 24025, at *16 (W.D. La. Jan. 12, 2012) (citing *Fordoche, Inc. v. Texaco, Inc.*,

---

[20] *Id.* ¶ 20.
[21] *Id.* ¶ 21.
[22] *Id.* ¶ 25.
[23] Pet. for Damages (Rec. Doc. 1-1). The other defendants were dismissed as parties while the matter was still in state court. *See* Not. of Removal (Rec. Doc. 1).
[24] Not. of Removal (Rec. Doc. 1), at 1.
[25] First Supplemental and Am. Compl. (Rec. Doc. 19) ¶ 26. Two Oil also alleged that Simons breached its fiduciary duties to Two Oil, but the court found that no fiduciary relationship existed. *See* Memo. Ruling (Rec. Doc. 20).
[26] Mot. for Partial Summ. J. (Rec. Doc. 29).
[27] Mot. for Summ. J. (Rec. Doc. 31).

463 F.3d 388, 392 (5th Cir. 2006)). In ruling on a motion for summary judgment, the district court shall draw all inferences in a light most favorable to the non-moving party. *Id.* at *3 n. 1 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (additional citation omitted)). "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Webber v. Christus Schumpert Health Sys.*, No. 10-cv-1177, 2011 U.S. Dist. LEXIS 99235, at *14 (W.D. La. Sep. 2, 2011) (citing *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)). "The non-movant cannot preclude summary judgment by raising 'some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of the evidence.'" *Cormier v. W&T Offshore, Inc.*, No. 10-cv-1089, 2013 U.S. Dist. LEXIS 53416, at *18–19 (W.D. La. Apr. 12, 2013) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

ALLEGED BREACH OF THE EQUIPMENT PURCHASE AGREEMENT

Two Oil alleges that Simons breached the Equipment Purchase Agreement because Simons declined to enforce the automatic renewal provision when Pallet failed to honor Simons' right of automatic renewal. Simons argues that it is entitled to judgment as a matter of law that the Equipment Purchase Agreement did not require it to exercise a right of renewal, much less obligate it to demand specific performance when Pallet dishonored the renewal option. The parties agree that the Equipment Purchase Agreement is governed by Oklahoma law.

Under Oklahoma law, a plaintiff must establish three elements to prevail on a breach of contract claim: (1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach. *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843 (Okla. 2001). "If a contract is complete in itself, and when viewed as a totality, is

5

unambiguous, its language is the only legitimate evidence of what the parties intended. That intention cannot be divined from extrinsic evidence but must be gathered from a four-corners' examination of the instrument." *Pitco. Prod. Co. v. Chaparral Energy, Inc.*, 2003 OK 5, ¶ 14, 63 P.3d 541, 546 (Okla. 2003). "Determining whether a contract is ambiguous and interpretation of an unambiguous contract are questions of law in Oklahoma . . . ." *Otis Elevator Co. v. Midland Red Oak Realty, Inc.*, 483 F.3d 1095, 1101 (10th Cir. 2007) (citations omitted). It is well-established in Oklahoma that "where the parties to a contract have deliberately put their engagement in writing, [any] parol evidence of *prior* or *contemporaneous* conversations or declarations tending to substitute a new and different contract for the one evidenced by the writing is incompetent." *Roberts v. Wells Fargo AG Credit Corp.*, 990 F.2d 1169, 1171 (10th Cir. 1993) (citations omitted) (internal quotation marks omitted).

The Equipment Purchase Agreement is a complete contract that contains the following merger clause:

> This Agreement sets forth the entire agreement and understanding of the parties with respect to the subject matter hereof and supersedes any previous or contemporaneous understandings, commitments, or agreements, oral or written, as to such subject matter. Any amendments to this Agreement must be in writing and executed by both parties.[28]

Two Oil initially argues that no rational actor would have sold the equipment without the expectation that Simons would enforce the automatic renewal provision. The court declines Two Oil's invitation to evaluate the intent of the parties, and will rule solely based on the unambiguous language in the contract.

---

[28] Ex. 8, Equipment Purchase Agreement (Rec. Doc. 29-5) ¶ 13.

Although the Equipment Purchase Agreement does not address the automatic renewal option, Two Oil asserts that two provisions require the court to interpret the agreement as obligating Simons to enforce the renewal option. First, the Equipment Purchase Agreement provides that:

> 1. <u>Purchase and Sale of Equipment</u>. Two Oil hereby sells, assigns, transfers, conveys and delivers to Simons, and Simons hereby purchases from Two Oil, all of Two Oil's right, title and interest in and to the Equipment, and any and all easements, rights of way, rights to use and licenses related to the continued use of the Equipment consistent with past and intended use. . . .[29]

Apparently,[30] Two Oil's argument is that for the equipment to be "consistent with past and intended use," it would have to be used at the same location, and thus Simons was required to exercise the automatic renewal. However, when the provision "consistent with past and intended use" is read in context, and especially in light of the fact that the automatic renewal option is not mentioned anywhere in the entire agreement, it is unambiguous that this clause does not obligate Simons to either automatically renew the Facilities Utilization Agreement or enforce the automatic renewal option against Pallet.

Second, Two Oil asserts that the Equipment Purchase Agreement states that "The Management Agreement would continue in effect," and argues that if Simons were not obligated to enforce the automatic renewal this statement would be superfluous. However, as noted by Simons, the Equipment Purchase Agreement actually states:

---

[29] *Id.* ¶ 1.
[30] Simons addresses this argument in its Memorandum in Support of Motion for Partial Summary Judgment (Rec. Doc. 29-7), but Two Oil does not mention the provision at all in its Response (Rec. Doc. 32). However, this provision is cited in the First Supplemental and Amending Complaint. (Rec. Doc. 19) ¶ 18.

> 16. <u>Management Agreement</u>. Except with respect to ownership of the Equipment, the Management Agreement shall remain in full force and effect.[31]

As Simons explains, this clause was necessary because prior to the Equipment Purchase Agreement, Simons had been leasing and paying for the equipment under the Management Agreement, and without such a clause it would be unclear whether payments for the equipment were still owed under the Management Agreement.

Nowhere in the Equipment Purchase Agreement is the term "renewal" or the Facilities Utilization Agreement even mentioned. Essentially, Two Oil wants the court to rewrite the terms of a contract with a merger clause based on its argument that no rational party would have entered into such a contract without an expectation of certain terms that are not in the contract. The court will not do so and finds that the Equipment Purchase Agreement did not obligate Simons to exercise the automatic renewal option in the Third Addendum to the Facilities Utilization Agreement, or to seek specific performance of that automatic renewal option.

ALLEGED BREACH OF THE MANAGEMENT AGREEMENT

In its First Supplemental and Amending Complaint, Two Oil alleges that Simons breached the Management Agreement because it failed to comply with the Facilities Utilization Agreement by (1) not paying Pallet properly, (2) not providing Pallet its monthly dock statement, and (3) not providing Pallet its books within 30 days.[32] Two Oil also asserts that Pallet did not honor the five-year automatic renewal due to its contention that Simons defaulted.[33] Simons denies that it ever breached the Facilities Utilization Agreement, and both parties argue that they are entitled to judgment as a matter of law on this claim.

---

[31] Ex. 8, Equipment Purchase Agreement (Rec. Doc. 29-5) ¶ 16.
[32] First Supplemental and Am. Compl. (Rec. Doc. 19) ¶ 26.
[33] *Id.* ¶ 22.

Two Oil must prove that Simons breached the Facilities Utilization Agreement to prevail on its claim for breach of the Management Agreement, and it has failed to do so. There has been no judicial determination that Simons breached the Facilities Utilization Agreement, and Simons explicitly denies there was ever any breach. The bare allegations in the amended complaint that Simons breached the Facilities Utilization Agreement are insufficient, and Two Oil did not even bother to address this issue in its response. Thus, Simons is entitled to judgment as a matter of law that it did not breach the Management Agreement.

BAD FAITH CLAIMS

Simons also contends it is entitled to judgment as a matter of law on Two Oil's claims that Simons acted in bad faith under Louisiana Civil Code Articles 1997 and 2004 when it allegedly breached the Equipment Purchase Agreement and the Management Agreement. *See* LA. CIV. CODE ANN. art. 1997 ("An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform."). Simons argues that Oklahoma law should govern the bad faith claims because both the Equipment Purchase Agreement and the Management Agreement are governed by Oklahoma law. *See Expertise, Inc. v. Aetna Finance Co.*, 810 F.2d 968, 972 (10th Cir. 1987) (citation omitted) ("[Under Oklahoma law] the plaintiff obviously must establish that a binding agreement has been breached to invoke this theory."). Two Oil does not address choice of law in its response, or the issue of bad faith at all for that matter. Regardless of whether Louisiana law or Oklahoma law governs, Two Oil has failed to establish that Simons breached either the Equipment Purchase Agreement or the Management Agreement, and thus it cannot prevail on its bad faith claims. Therefore, Simons is entitled to judgment as a matter of law.

PROMISSORY NOTE

Two Oil's motion for summary judgment also asserts that there is no disputed issue of fact that Simons breached its Promissory Note by failing to pay for the equipment and accessories it purchased from Two Oil. Both parties agree that Simons owes Two Oil money relating to the Promissory Note, but that the amount owed is still in dispute.[34] Thus, Two Oil's Motion for Summary Judgment will be **GRANTED** insofar as both parties agree that Simons owes Two Oil a disputed amount of money relating to the Promissory Note.

## CONCLUSION

The court finds that Simons is entitled to judgment as a matter of law that (1) it did not breach the Equipment Purchase Agreement, (2) it did not breach the Management Agreement, and (3) it did not act in bad faith under Louisiana Civil Code Articles 1997 and 2004. Thus, Simons' Motion for Partial Summary Judgment will be **GRANTED**. Although Two Oil's Motion for Summary Judgment must be denied regarding Simons' alleged breach of the Equipment Purchase Agreement, the court finds that Simons owes Two Oil a disputed sum of money relating to the Promissory Note. Thus, Two Oil's Motion for Summary Judgment will be **DENIED IN PART**, and **GRANTED IN PART**.

Lake Charles, Louisiana, this 6 day of _____June_____, 2016.

_____
PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[34] Pl.'s Memo. in Supp. of Mot. for Summ. J. (Rec. Doc. 31-2), at 8; Def.'s Opp'n to Pl.'s Memo. in Supp. of Mot. for Summ. J. (Rec. Doc. 34), at 2.